IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BILLCO INTERNATIONAL, INC.

    v.                :   Civil Action No. DKC 09-2692

CHARLES PRODUCTS, INC.

## MEMORANDUM OPINION

Presently pending and ready for review in this copyright case is the motion of Defendant Charles Products, Inc. for summary judgment (ECF No. 28). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Defendant's motion for summary judgment will be denied.

## I. Background

Plaintiff Billco International, Inc. ("Billco") is a full service importer of custom souvenir products incorporated in the state of New Jersey. (ECF No. 23 ¶¶ 1, 7). Billco supplies souvenir shot glasses to zoos, aquariums, national parks, and other tourist attractions. (ECF No. 30-1, at 70-71). Defendant Charles Products, Inc. ("CPI") is a Maryland corporation. (ECF No. 23 ¶ 2). CPI also designs and sells custom souvenir products to zoos, aquariums, and other tourist attractions, including souvenir shot glasses. (ECF No. 30-10, at 6). Both

parties sell souvenir shot glasses with three-dimensional dolphins and tigers protruding from the sides of the glass. Plaintiff maintains that it owns a copyright on the dolphin and tiger shot glass designs and accuses Defendant of infringement.

**A.  Plaintiff's Design and Production of the Shot Glasses**

Plaintiff developed its line of animal themed shot glasses in 2006.  Plaintiff has identified Kristen Nadler, a commercial artist for Billco, as the creator of the two copyrighted works. (ECF No. 30-2, at Interrogatory No. 3).  Ms. Nadler testified that the idea for the dolphin shot glass arose from a meeting with Billco customer Dolphin Cay in early 2006.  (ECF No. 30-3, at 12).  Ms. Nadler asked Billco employee Jennifer McCaffery to prepare design drawings of the dolphin shot glass based on instruction and input from Dolphin Cay and herself.  (*Id.* at 12, 16, 22).  Ms. McCaffery prepared two-dimensional renderings using Adobe Illustrator that a showed a lateral view of the shot glass with the outline of a dolphin head and tail protruding from either side of the glass.  (*Id.* at 21).  Ms. Nadler reviewed the two-dimensional drawings and submitted them to Plaintiff's supplier, Keystar International Inc. ("Keystar"), along with a written description of the product and a number of reference photographs.  (*Id.* at 14, 17).  The reference photographs were images of dolphins taken from the Internet.

(*Id.* at 14).[1]  Keystar then prepared a three-dimensional mold based on the information supplied by Plaintiff and the mold was approved by Plaintiff for production.  (*Id.* at 20-21).

Ms. Nadler testified that, for the tiger shot glass, she personally prepared the two-dimensional lateral view drawing for Keystar.  (*Id.* at 35-37).  The original email transmitting the drawings and instructions to Keystar was corrupted, but in separate correspondence that could be retrieved Ms. Nadler asked Keystar to produce a molded tiger shot glass and to make a shot glass "like the black bear" along with a number of images of tigers for Keystar's reference.  (ECF No. 30-6).  Plaintiff has also produced a drawing of the tiger labeled as the art file for the tiger shot glass.  (ECF No. 30-7).  But this file is dated October 6, 2006, a month after the tiger mold was approved for production.  (*Id.;* ECF No. 30-6, at BILLCO 00012).

Plaintiff submitted applications for copyright registration of the three-dimensional dolphin and tiger designs on October 31, 2006.  (ECF No. 30-1, at 65, 66).  The dolphin shot glass was assigned U.S. Copyright Registration No. VA-1-380-656, and the tiger shot glass was assigned U.S. Copyright Registration No. VA-1-388-655.  (ECF No. 23 ¶¶ 9-10; ECF Nos. 30-9 and 30-

---

[1] The emails submitting this information to Keystar were corrupted and are no longer available.  (ECF No. 30-3, at 18).

10).  The registrations list Billco as the author of the works, and they are classified as "works made for hire."  (*Id.*). Attached to the applications were photographs of the shot glasses.

**B.  Defendant's Design and Production of the Shot Glasses**

CPI began to develop its line of three-dimensional animal shot glasses in 2008.  In July 2008, Glen Heitman, President of CPI, saw dolphin and fish shot glasses for sale at the Texas Aquarium gift shop.  (ECF No. 30-10, at 11-14).  He purchased sample dolphin and fish shot glasses from the aquarium and gave them to CPI's product development manager, Doug Miller, when he returned to Maryland.  (*Id.* at 14-15).  A CPI employee then contacted one of CPI's suppliers in Hong Kong to see if they could supply the shot glasses to CPI.  (ECF No. 30-13, at 35; ECF No. 35-14).  The supplier, Keystar, is the same one that supplies Plaintiff with its souvenir shot glasses.  Keystar responded "the item is one of our customer's products and they bought from us . . . and because of our agreement with them, we cannot sell this item to other customers."  (ECF No. 32-3, at 12 (BILLCO 00249)).

Because Keystar could not supply the products, CPI began to design its own line and assigned responsibility for the project to Mike Tyree, an in-house commercial artist.  Mr. Tyree

testified that he was given a bear shot glass with an anonymous handwritten note requesting that he design a line of animal shot glasses like the bear one to include a tiger and dolphin glass. (ECF No. 30-14, at 4-5, 10). Mr. Tyree prepared two-dimensional design drawings with multiple views for the tiger shot glass without looking at any reference materials. (*Id.* at 16). He did not see Plaintiff's dolphin or tiger shot glass until his deposition. (*Id.* at 20-21). These drawings were submitted to Keystar to prepare a mold, but the initial mold was deemed unsatisfactory. In response, Mr. Tyree prepared additional drawings and a tiger painting and submitted them to Keystar with a request for a new mold. (*Id.* at 22-23). The new mold was also unsatisfactory, and Mr. Tyree prepared a third set of drawings with extra detail for the posture and ear placement. (*Id.* at 24; ECF No. 15). On its third try, Keystar's mold was accepted, and CPI began to order the product for its clients.

Mr. Tyree also designed the dolphin shot glass designs for CPI. He prepared detailed drawings for two different versions that were submitted to Keystar to prepare a mold. The smaller mold was approved immediately for production. (ECF No. 30-14, at 28).

### C.   Procedural Background

Plaintiff learned that Defendant was also selling tiger and dolphin shot glasses in August 2009 when it obtained a copy of a CPI product brochure and also mistakenly received a shipment of CPI products from Keystar. (ECF No. 23 ¶¶ 12-13; ECF No. 32-9, at 14). In response, Plaintiff's counsel sent a letter to CPI stating that CPI did not have the right to use its copyrighted designs. (ECF No. 23 ¶ 15). Plaintiff filed its initial complaint in this court on October 16, 2009. (ECF No. 1). The amended complaint includes one count of copyright infringement and alleges that Defendant's acts constitute violations of the exclusive rights of Plaintiff under 17 U.S.C. §§ 106 and 113 and constitute copyright infringement under 17 U.S.C. § 501. (ECF No. 23). On May 10, 2010, Defendant filed a motion for summary judgment. (ECF No. 28).

## II.  Motion for Summary Judgment

### A.   Standard of Review

Defendant has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*,

532 F.3d 291, 297 (4th Cir. 2008).  In other words, if there
clearly exist factual issues "that properly can be resolved only
by a finder of fact because they may reasonably be resolved in
favor of either party," summary judgment is inappropriate.
*Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 250 (1986); *JKC
Holding Co., LLC v. Washington Sports Ventures, Inc.*, 264 F.3d
459, 465 (4th Cir. 2001).

When ruling on a motion for summary judgment, the court
must construe the facts alleged in the light most favorable to
the party opposing the motion.  *See Scott v. Harris*, 127 S.Ct.
1769, 1774 (2007); *Emmett,* 532 F.3d at 297.  A party who bears
the burden of proof on a particular claim must factually support
each element of his or her claim.  *Celotex Corp.*, 477 U.S.
at 323.  "[A] complete failure of proof concerning an essential
element . . . necessarily renders all other facts immaterial."
*Id*.  Thus, on those issues on which the nonmoving party will
have the burden of proof, it is his or her responsibility to
confront the motion for summary judgment with an affidavit or
other similar evidence in order to show the existence of a
genuine issue for trial.  *See Anderson*, 477 U.S. at 254; *Celotex
Corp.*, 477 U.S. at 324.  "A mere scintilla of proof, however,
will not suffice to prevent summary judgment."  *Peters v.
Jenney*, 327 F.3d 307, 314 (4th Cir. 2003).  There must be

"sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249-50(citations omitted).

## B.  Analysis

Copyright protection extends to "original works of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102.  A copyright holder has certain exclusive rights to the work, including the right to reproduce all or any part of the copyrighted work. *Id*. § 106.  One infringes a copyright when he or she violates one of the exclusive rights to a work held by a copyright owner, and the owner has the right to sue for infringement. *See* 17 U.S.C. § 501.  To establish a *prima facie* case of copyright infringement, a plaintiff must demonstrate that (1) "he owned the copyright to the work that was allegedly copied," and (2) "the defendant copied protected elements of the work." *Bouchat v. Baltimore Ravens, Inc.*, 241 F.3d 350, 353 (4th Cir. 2001).

Defendant argues that summary judgment is appropriate for two distinct reasons.  First, Defendant argues that Plaintiff does not have a valid copyright on the three-dimensional shot glass designs both because Plaintiff does not actually own the

copyright for the registered designs and because the designs are not original. (ECF No. 29, at 30-35). Second, Defendant argues that it does not infringe the registered works because its products are not substantially similar to Plaintiff's products. (*Id.* at 36). Plaintiff counters that its certificates of registration for the copyrights constitute *prima facie* evidence of their validity that Defendant has not rebutted. (ECF No. 32, at 13-14). Plaintiff also maintains that the shot glass designs easily satisfy the originality requirement for valid copyrights and that Defendant's products infringe because they are substantially similar to its own. (*Id.* at 8).

**1. Valid Copyright**

The starting point for the analysis is whether Plaintiff owns a valid copyright. This question breaks down into two distinct subparts: (1) whether Plaintiff was the author of the registered works and (2) whether the works are original.

The Copyright Act affords protection to "original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated." 17 U.S.C. § 102(a) (2006). A certificate of registration issued by the Copyright Office is "*prima facie* evidence of the validity of the copyright and of the facts stated in the certificate," such as ownership.

17 U.S.C. § 410(c).  When such a certificate exists, the burden shifts to the defendant to prove that the claimed copyrights are invalid.  *M. Kramer Mfg. Co. v. Andrews*, 783 F.2d 421, 434 (4th Cir. 1986).

>    **a.  Authorship**

The Supreme Court has stated the general rule that "the author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection" and further has recognized that "[t]he Act carves out an important exception, however, for 'works made for hire.'"  *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989).  In the case of works made for hire "the employer or other person for whom the work was prepared is considered the author" and owns the copyright, unless there is a written agreement to the contrary.  *Id.* (citing § 201(b)).  Section 101 of the 1976 Copyright Act provides that a work is "for hire" under two sets of circumstances:

>    (1) a work prepared by an employee within the scope of his or her employment; or
>
>    (2) a work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, if the

> parties expressly agree in a written
> instrument signed by them that the work
> shall be considered a work made for hire.

Plaintiff represented in its copyright application that the registered works fall under the work for hire provision, presumably because Plaintiff maintains they were designed by Billco employee, Kristen Nadler, in the scope of her employment. (ECF No. 32, at 3-4)(citing 32-2, Nadler Deposition). Defendant disagrees and argues that there is no evidence that Ms. Nadler or anyone else at Billco created the works, and asserts that they were designed and sculpted by an unknown artist who was retained by Billco's supplier, Keystar. (ECF No. 34, at 2). Defendant further points out that Plaintiff has produced no original images of dolphins or dolphin shot glasses created or designed by Billco, and the only evidence in the record is a series of dolphin and tiger images taken from the Internet and a drawing of the dolphin shot glass that post-dates the work's alleged creation date. (*Id.* at 3).

Where the manufacture or production of the copyrighted work is distinct from the conception of the work, courts struggle to determine when the idea is translated into a fixed, tangible expression and to whom the credit for the work's creation belongs. Starting with the basic premise that to be an author, one must supply more than mere direction or ideas, *Community for*

*Creative Non-Violence,* 490 U.S. at 737, courts have attempted to draw a line between providing conceptual guidance that is fixed as a copyrightable work by a separate party and providing detailed designs or blueprints to a manufacturer that simply builds the work as instructed. Authors "are entitled to copyright protection even if they do not perform with their own hands the mechanical tasks of putting the material into the form distributed to the public." *Andrien v. S. Ocean Cnty. Chamber of Commerce*, 927 F.2d 132, 135 (3d Cir. 1991); *see also Lakedreams v. Taylor*, 932 F.2d 1103, 1108 (5th Cir. 1991). But a person who merely describes to an author what the commissioned work should do or look like is not an author or joint author. *Gaylord v. United States*, 595 F.3d 1364, 1379 (Fed. Cir. 2010)(citing *S.O.S. Inc. v. Payday, Inc.*, 886 F.2d 1081, 1087 (9th Cir. 1989)). The Federal Circuit in *Gaylord* elaborated on this rule and explained that "[i]f one commissioned a work for a cowboy riding a horse, that contribution would not constitute copyrightable expression" and even if "one later instructed the artist to depict the cowboy as weathered, wearing a cowboy hat, and riding slowly in calm wind, that would not rise to the level of copyrightable expression." *Id.*

Cases dealing with three-dimensional toys that are manufactured by third parties based on detailed drawings and

plans provide some help in the analysis. For example in *JCW Invs., Inc. v. Novelty, Inc.* 289 F.Supp.2d 1023, 1032-34 (N.D.Ill. 2003), *aff'd*, 482 F.3d 910 (7th Cir. 2007), the dispute focused on who owned the copyright for a three-dimensional plush toy. Two individuals, James Wirt and Geoff Bevington, had created drawings of the plush toy character "Fred" and submitted these, along with instructions regarding the toy's size, to a three-dimensional character designer who prepared a pattern and prototype of Fred. *Id.* at 1028. The prototype, pattern, and original drawings were sent to two toy manufacturers in Asia who prepared sample models of the toy. *Id.* Wirt and Bevington made various revisions based on the prototype models and submitted the final version for copyright registration. *Id.* at 1029. Their authorship was disputed by the defendants who argued that the character designer or the manufacturer was the author of the three-dimensional work as a derivative of the drawings. *Id.* at 1032-33. The court determined, however, that only Wirt and Bevington could claim authorship of the toy and explained:

> [a] visual comparison reveals that [the character designer's] prototype is a faithful translation of Bevington's drawing. Moreover, defendant has provided no evidence to contradict plaintiff's contention that Wirt supervised [the character designer's] sculpture, and that whatever differences exist between the sketches and finished product were directed by Wirt to ensure that this first prototype best matched Wirt's and

13

> Bevington's original design. There is
> simply no evidence suggesting that [the
> character designer] exercised any creative
> control over the Fred prototype.

*Id.* at 1034; *see also Kyjen Co., Inc. v. Vo-Toys, Inc.*, 223
F.Supp.2d 1065 (C.D.Cal. 2002)(finding that a company owned a
valid copyright where the assigning author provided a
manufacturer with a sketch and instructions and the toy
generally reflected the original sketches).

There is a factual dispute in this case regarding the type
of materials and level of design detail that Plaintiff provided
to its supplier Keystar. Plaintiff's employees have testified
that they created original design drawings that were submitted
to Keystar via email along with detailed instructions
(ECF No. 30-2), but Defendant asserts that because the actual
email files were corrupted and can no longer be located there is
no evidence of Plaintiff's authorship of the dolphin design.
Defendant also maintains that Plaintiff's testimony is self-
serving and conclusory and insufficient to establish authorship.
(ECF No. 34, at 4). For the tiger design, Defendant concedes
that Plaintiff has produced email communications with more
detailed instructions for its design, (ECF No. 34, at 6 (citing
ECF No. 30-6 at Billco 00001)), but still argues these are
insufficient.

At this stage of the proceedings, the court simply cannot weight the evidence as proposed by Defendant. The parties' disagreements on the facts lead to disagreements about the relevance of prior case law. Plaintiff relies primarily on the ruling in *Kygen Co.* and identifies key factual circumstances from *Kygen* that it alleges are present here. Specifically Plaintiff highlights the fact that its employees prepared detailed drawings, discussed them with the manufacturer and maintained creative control, and that the manufacturer stated that it believes Billco owns the copyright for the tiger and dolphin designs. (ECF No. 32, at 18). Defendant counters that the cases are readily distinguishable because here Plaintiff has not produced any sketches that would allow the court to conclude that it had created an original work, Plaintiff did not meet with the sculptor, Plaintiff did not request design changes to the models, and Plaintiff gave the artist only broad and vague instructions to create the products. (ECF No. 34, at 11). The fact that Plaintiff cannot produce the actual drawings and communications it claims were sent to the manufacturer does not necessarily preclude the use of secondary evidence under Fed.R.Evid. 1004. Defendant also disputes Plaintiff's contention that Keystar admitted that Billco was the author,

arguing both that Keystar did not make that statement and that any statements from Keystar are inadmissible.[2] (*Id.*).

Despite Defendant's protestations to the contrary, there remain genuine issues of material fact with respect to Plaintiff's role in creating the copyrighted works. While Defendant raises some doubt about Plaintiff's authorship, Plaintiff has identified sufficient evidence in the form of employee testimony and documents showing correspondence with Keystar to prevent the entry of summary judgment against Plaintiff on the issue of authorship.

### b. Originality

Defendant also challenges the originality of the works. Defendant argues that Plaintiff cannot claim a copyright on the idea of a dolphin or tiger shot glass and that Plaintiff's designs do not contain sufficient original expression to distinguish them from the numerous stock dolphin and tiger renderings in the public domain. (ECF No. 34, at 14-15). Plaintiff maintains that its designs easily exceed the low

---

[2] Plaintiff asserts in its opposition that Billco's manufacturer has publicly stated that it believes Billco is the owner of its copyrighted dolphin and tiger designs. (ECF No. 32, at 2). The exact words used by Billco in the email produced are: "the item is one of our customer's products and they bought from us. . . . and because of our agreement with them, we cannot sell this item to other customers." (ECF No. 32-3, at 12 (BILLCO 00249))

threshold for originality and points to Fourth Circuit precedent expressly holding that animal designs in useful articles can be copyrighted. (ECF No. 32, at 8-9). Plaintiff also insists that it is not claiming a copyright over the idea of animal shot glass, but rather that idea's expression in the registered works. (*Id.* at 12).

Satisfying the originality requirement for copyright is a relatively easy task. "Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991). "[T]he requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark." *Id.* Here, however, two aspects of the registered works limit the potential scope of the copyright—the fact that the shot glasses are useful articles and their realistic depiction of animals.

Copyright protection is not available for useful articles, *i.e.* "article[s] having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information." 17 U.S.C. § 101. Where the work at issue is a three-dimensional sculptural work that constitutes a useful

article, courts must consider whether the original artistic contribution is conceptually separable from the useful article. *See, e.g., Universal Furniture Int'l, Inc.*, 618 F.3d 417 (4th Cir. 2010)(citing portion of the Copyright Act, 17 U.S.C. § 101 explaining that "the design of a useful article . . . shall be considered . . . a sculptural work only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article"). Only the decorative elements that are separable from the utilitarian aspects are entitled to copyright protection. *Id.* at n.7.

Similarly, when works contain realistic depictions of animals or other naturally occurring items, the scope of the copyright protection for the work may be limited because the features and behavior of animals in nature are part of the public domain. Realistic sculptures of animals are still copyrightable if they represent the author's creative work, but direct copies or casts of animals are not. *Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co. Inc.*, 74 F.3d 488 (4th Cir.), *cert. denied*, 519 U.S. 809 (1996); *see also Satava v. Lowry*, 323 F.3d 805, 810-811 (9th Cir.), *cert. denied*, 540 U.S. 983 (2003)(finding a very thin copyright for realistic

glass sculptures of jellyfish). The thin copyright in such works means that only exact or nearly exact copies may constitute infringement. *See e.g., Herbert Rosenthal Jewelry Corp. v. Honora Jewelry Co.*, 509 F.2d 64 (2d Cir. 1974)(finding no copyright infringement where both parties had produced turtle pins with ten gems on the back of the carapace). In *Herbert Rosenthal Jewelry Co.*, the Second Circuit explained that "since all turtles are created more or less along the same lines, appellant cannot, by obtaining a copyright upon one design of a turtle pin, exclude all others from manufacturing gold turtle pins on the ground that they are substantially similar in appearance." *Id.* at 65.

Defendant takes its argument too far by claiming that Plaintiff's works lack sufficient originality to merit any copyright protection. Although the shot glasses have utilitarian aspects and include realistic depictions of animals, the specific design and presentation of the animals and their features constitute an original expression that is entitled to copyright protection, albeit a copyright that is limited in scope to the original elements of the design.

Overall Defendant has not established as a matter of law that Plaintiff's copyrights are invalid.

**2. Infringement**

Defendant also argues that summary judgment should be granted in its favor because it has not infringed the copyrights at issue. Where, as here, a plaintiff has no direct evidence of copying, the plaintiff must show that the defendant had access to the copyrighted work and that the defendant's work is "substantially similar" to plaintiff's in order to succeed in a claim for copyright infringement. *See Towler v. Sayles*, 76 F.3d 579, 582-83 (4th Cir. 1996). Proving substantial similarity in turn has a two pronged requirement. *Dawson v. Hinshaw Music, Inc.*, 905 F.2d 731, 732 (4th Cir.), *cert. denied*, 498 U.S. 981 (1990). "The plaintiff must establish substantial similarity of both the ideas of the two works and of the expression of those ideas." *Id.* In some cases the test has been expressed as requiring the plaintiff to prove extrinsic similarity because the works contain "substantially similar ideas that are subject to copyright protection" and intrinsic similarity "in the sense that they express those ideas in a substantially similar manner from the perspective of the intended audience of the work." *Towler*, 76 F.3d at 583.

Defendant cites to several cases arising in the Ninth Circuit in which a copyright holder of a realistic animal sculpture was found to possess only a "thin" copyright that

protects against only "virtually identical" copying, citing *Satava v. Lowry*, 323 F.3d 805, 812 (9th Cir. 2003). The Ninth Circuit applies a two part analysis, an objective extrinsic test and a subjective intrinsic test. It has held that: "[for] the purposes of summary judgment, only the extrinsic test is important because the subjective question whether works are intrinsically similar must be left to the jury." *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004). It is not clear whether the extrinsic test requires expert testimony, where the focus is whether, objectively, there has been copying of the copyrightable elements. In an opinion issued after the briefing in this case was complete, the Fourth Circuit synthesized the analysis as follows:

> Substantial similarity is a two-pronged test. The plaintiff must show that the two works are (1) "extrinsically similar because they contain substantially similar ideas that are subject to copyright protection" and (2) "intrinsically similar in the sense that they express those ideas in a substantially similar manner from the perspective of the intended audience of the work." *Id.* (internal citations and quotation marks omitted).

*Universal Furniture Intern., Inc.*, 618 F.3d at 435 (citing *Lyons P'ship*, 243 F.3d at 801). Further,

> The extrinsic inquiry is an objective one on which expert testimony may be relevant. *Dawson v. Hinshaw Music, Inc.*, 905 F.2d 731, 733 (4th Cir. 1990). The extrinsic analysis

21

> looks to "external criteria" of "substantial
> similarities in both ideas and expression."
> *Apple Computer Co. v. Microsoft Corp.*, 35
> F.3d 1435, 1442 (9th Cir.1994). The
> intrinsic inquiry, in contrast, implicates
> the perspective of the object's intended
> observer. *Dawson*, 905 F.2d at 733. In
> assessing intrinsic similarity, the
> factfinder looks to the "total concept and
> feel of the works, but only as seen through
> the eyes of the ... intended audience of the
> plaintiff's work." *Lyons*, 243 F.3d at 801.
> (internal citations and quotation marks
> omitted)(emphasis in original). Judge
> Learned Hand phrased the intrinsic test as
> whether "the ordinary observer, unless he
> set out to detect the disparities, would be
> disposed to overlook them, and regard their
> aesthetic appeal as the same." *Peter Pan
> Fabrics, Inc. v. Martin Weiner Corp.*, 274
> F.2d 487, 489 (2d Cir.1960).

*Id.* at 435-36.

Although Plaintiff argues in terms of the intrinsic test ("casual or ordinary observer"), the record nevertheless contains sufficient factual issues concerning similarity of the copyrightable elements. Neither party presents expert testimony, but rather relies on photographs of the works and lay testimony. The parties' descriptions of their works' similarities are at odds. Defendant argues that the works are not substantially similar and points to the tigers' differing posture, tails, ears, paws, shaped heads, fur, jaws, and necks. (ECF No. 34, at 17). Plaintiff, on the other hand, argues that the tigers have at least six notable similarities: (1) they

have the same front and back body proportions protruding from the glass, (2) they have the same positioning of the front/rear legs and paws, (3) on both tigers the lower jaw protrudes less than the upper jaw, (4) on both tigers the lower and upper jaws make what appears as a toothless, thin, bemused "smile" or "expression", (5) on both tigers the fur and body contouring are similar and (6) the eyes on both tigers are almond-shaped and proportionally equivalent sizes. (ECF No. 32, at 21). For the dolphin, Defendant points to the differing postures, tails, eyes, head shapes, and beaks or mouths, (ECF No. 34, at 20), while Plaintiff argues that both have the same front/rear body proportions extending from the side of the glass, the same clenched smile/expressions, and same body contouring with no blow-hole or dorsal fin protrusions. (ECF No. 32, at 22).

While Defendant asserts that "the lack of substantial similarity is so clear that is [sic] falls outside the range of reasonably disputed fact questions requiring resolution by a jury," (ECF No. 30, at 37), the court finds that there remains a legitimate factual dispute about whether the differences in the two parties' work renders them sufficiently dissimilar. The parties' laundry lists of similarities and differences as well as court's comparison of images of each of the works, (*see* ECF No. 32, at 21-22), demonstrate that there is room for debate

about the products' similarities, as well as the determination whether any particular element is copyrightable. The legal determination on summary judgment as to the extrinsic test would require, first, a finding as a matter of law which elements are copyrightable, and then whether those are similar or not. The current record does not demonstrate that Defendant is entitled to judgment as a matter of law, and summary judgment will be denied.

## III. Conclusion

For the foregoing reasons, Defendant's motion for summary judgment will be denied. A separate Order will follow.


                                      /s/
                              _____
                              DEBORAH K. CHASANOW
                              United States District Judge